## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Crim. No. 1:18-cr-00017-NT** |
| | ) | |
| **NINA MICHALSKI** | ) | |

### GOVERNMENT'S SENTENCING MEMORANDUM

NOW COMES the United States, by and through its attorneys, Halsey B. Frank, United States Attorney for the District of Maine, and Chris Ruge, Assistant United States Attorney, and submits this memorandum to assist the Court in its determination of an appropriate sentence.

**I.      Relevant Background**

On February 27, 2018, Ms. Michalski pleaded guilty to sending bomb threats through the mail.  Specifically, she mailed a series of threatening letters from Maine to Jehovah's Witness Kingdom Halls in California over a period from about October 2016 through the end of January 2017.  No fewer than three letters were received by three separate Kingdom Halls in Contra Costa County, which letters were subsequently reported to police.  During her plea colloquy, Ms. Michalski admitted to sending a fourth letter, but averred that that letter did not mention a bomb. The contents of this letter are not otherwise known, as Ms. Michalski declined to discuss the offense conduct with Probation.

Ms. Michalski does not specifically object to any of the factual or guideline findings in the revised PSR; instead, she makes a general request for a below-guideline sentence, specifically seeking a fully probated sentence.  ECF No. 15, p. 1.  In support of this request, Ms.

Michalski also specifically asks for a departure based on a diminished mental capacity under U.S.S.G. § 5K2.13.  Id.

## II.    Sentencing Issues

The government respectfully submits that the sentence in this case should include a term of imprisonment, as well as period of supervised release and a fine.  Such a sentence is recommended by a full consideration of the factors set forth 18 U.S.C. § 3553(a), including the seriousness of the offense, its repeated nature, the religious animus motivating it, and the defendant's prior history of similar conduct.

While the guidelines are advisory, they nonetheless reflect sentencing practices across districts, and help to avoid unwarranted sentencing disparities between similar defendants, as is required by 18 U.S.C. § 3553(a)(6).  See United Stated v. Merced, 603 F.3d 203, 223 (3d Cir. 2010) (holding that the district court should take care that the sentence imposed carefully consider the risk of unwarranted disparities between defendants with similar records).   Here, the applicable guidelines properly address the salient features of the crime, and are helpful in crafting an appropriate sentence.

### A.  Bomb threats are acts of terror.

The instant offense—a bomb threat—is a serious matter.  Bomb threats, while easy to make, can create significant consequences.

As a primary matter, they terrorize.  Threats such as these put the targeted community on edge, purposefully instilling fear and apprehension.  Here, the defendant even went a step further, warning that she "would never say when or how" the bombs would be planted, thereby extending the threat into an indefinite future and robbing her victims of peace of mind for an even greater period.  Moreover, the place targeted was a house of worship, a sanctuary where

2

families and communities come together for peace and communion. Through her criminal acts, the defendant sought to destroy this sense of respite out of sheer malice toward those she took it upon herself to deem "wicked people."

Bomb threats not only terrorize, however; they also consume resources of the victims and of law enforcement disproportionate to the ease of committing the crime.  Here, one of the victim congregations was moved to purchase a security system and to start locking the door during services.  And to catch Ms. Michalski—and stop her repeated criminal acts—took the efforts of three local law enforcement offices, plus the cross-county efforts of the FBI and its affiliated task force agencies.

### B.  The defendant made multiple threats to multiple victims.

The crime of conviction does not represent a single fit of pique.  Ms. Michalski mailed bomb threats on no less than three occasions to three separate Kingdom Halls, and admitted at her plea to sending a fourth letter, which she said did not mention bombs.  The acts in this case are indicative of an intent to terrorize not just a single congregation, but a community of congregations.

What is more, her ire was not limited to Jehovah's Witnesses in general, but also specifically targeted her former sister-in-law, placing her sister-in-law's name on one of the letters to make sure that she would receive a visit from law enforcement.  Ms. Michalski tries to cast her meanness toward her brother's widow as "a cry for help," positing that because the interview of the sister-in-law lead quickly to Michalski, that Michalski must have wanted to get caught.  This theory is without support in the record.  The fact is, she blamed her sister-in-law for her brother's death, and wanted to punish her along with other members of her church.  PSR, ¶

7(b).  Attempting to frame her sister-in-law, however ineptly, is simply not a feather in the

defendant's cap.  Indeed, similar cases have led to stiff penalties.

In United States v. Juan Thompson, the defendant sent a series of some 10 bomb threats

to Jewish centers across the country.  No, 1:17-cr-00165-PKC, Dkt No. 31, Gov't Sent. Memo,

(S.D.N.Y 2017).  These acts of terror were related to the defendant's tandem campaign of

cyberstalking his former girlfriend.  In some instances, the threats implicated the defendant

himself, apparently in an attempt to frame his ex for framing him.  In Thompson, the defendant's

guideline sentence was 37 to 46 months, but the sentencing court found that an upward variance

was warranted due the breadth of the conduct and its severity compared to the typical case.

Thompson, Dkt. No. 34, p. 5.  The court accordingly imposed a 60 month sentence.  Id.

Similar to Mr. Thompson, Ms. Michalski should not be given credit for including her

brother's widow in her campaign of hate and intimidation.  It is an aggravating factor, if

anything, and in any case does nothing to lessen the significant crime inflicted on the victim

congregations.

**C.  The defendant's acts constitute hate crimes.**

Perhaps most significant is the fact that the defendant's crimes fall squarely within the

hate crime enhancement described in Chapter 3 of the Sentencing Guidelines.

This is not a close case.  The letters leading to the instant charge themselves clearly

indicate religious animus toward Jehovah's Witnesses, referring to their facilities as "Satan's

Synagogue," and admonishing the recipients "you people must be stopped."  PSR ¶3.

In addition, Michalski's correspondence with her children, as recovered from her phone,

indicates a long-standing, continuous, and growing hatred for Jehovah's Witnesses based on their

religious beliefs.  PSR ¶7(b). Ms. Mishcalski's venom toward Jehovah's witnesses, which she

4

freely shared with both her children via text message, continued until just days before the search warrant was executed at her Presque Isle lodgings.   On April 23, 2017, she shared with her daughter her approval of a reported Russian crack-down on the faith, opining "F[--]k that religion, hope their f[-----]g Kingdom Halls get nombed. [sic]"  Text messages, lns. 8635-8637.

### D.  The defendant fails to show a diminished capacity within the meaning of U.S.S.G. § 5K2.13.

The defendant feints toward a diminished capacity departure, but ultimately fails to connect the dots.  U.S.S.G. §5K2.13 does provide for a downward departure in a case where the offense was committed while the defendant suffered from "a significantly reduced mental capacity" <u>and</u> that reduced capacity "contributed substantially to the commission of the offense." While the defendant here may suffer from some diagnosable conditions described in the PSR, there is simply no evidence showing that this condition had any causal relation to the crimes of conviction, or otherwise prevented her from curbing her inclinations.  Indeed, the defendant's history is replete with sustained and concerted impulse control—when it suits her—as demonstrated by her professional certifications, educational pursuits, and successes as a parent. The problem seems to arise when she gets angry at people who rub her the wrong way, be it her neighbors (PSR ¶ 22); her then-teenage daughter (PSR ¶ 26); her ex-husband (PSR ¶ 37); or any Jehovah's Witness living in Contra Costa County, California (PSR ¶ 3).

### E.  The defendant's history of violent threats is an aggravating factor.

That a defendant tends to lash out at people she hates is hardly a mitigating condition in any crime.  The government respectfully submits it is even less so here, where the defendant has had multiple brushes with the law over several years and, despite light treatment by law enforcement and the courts, not only continues her acts of intimidation, but escalates and broadens her criminal behavior.  Such cases are, for better or worse, appropriate predicates for a

term of imprisonment.  Lesser forms of punishment simply have not been effective, and seem to have only emboldened the defendant toward greater crimes.  Indeed, "defendants who receive the benefit of a rehabilitative sentence and continue to commit crimes should not be treated with further leniency."  U.S.S.G. § 4A1.2, application note 9 (describing policy goals of § 4A1.2(f)).  Clearly, the defendant is apprehensive of the prospect of prison, and rightly so.  All the more reason to underscore the serious consequences of her acts now, to reinforce with crystalline clarity what awaits if she travels further down this road.  It may be that Ms. Michalski is corrigible at this point in her life.  But imposing a sentence with no jail time is not only a repeat of the same approach that has brought us to this point, but, perhaps more importantly, unsuitably diminishes the seriousness of the crime, the dignity of the victims of that crime, and provides unreasonably disparate outcomes for defendants committing similar offenses with similar records.

## III.   Conclusion.

While the Court may properly consider some downward departure from the guideline sentence range in this case, the government respectfully submits that any sentence imposed should include at least some number of months in prison, followed by three years of supervised release and a guideline fine of $20,000.

Dated: May 22, 2018                       Respectfully submitted,

HALSEY B. FRANK
UNITED STATES ATTORNEY

/s/Chris Ruge
Assistant United States Attorney

U.S. Attorney's Office
202 Harlow Street, Room 111
Bangor, ME  04401
(207) 945-0373
chris.ruge@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2018, I electronically filed the GOVERNMENT SENTENCING MEMORANDUM with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Christopher Largay., Esq.

HALSEY B. FRANK
United States Attorney

/s/ Chris Ruge, Esq.
Assistant United States Attorney
United States Attorney's Office
202 Harlow Street, Suite 111
Bangor, ME 04401
(207) 945-0373
chris.ruge@usdoj.gov